Our fourth case for today is Lavallee against MedOne Solutions. Mr. Levy. Thank you. May it please the court, I'm Nicholas Levi for defendant and appellant MedOne Solutions. This is a simple case of statutory construction. MedOne Solutions, a debt collector, chose to initially communicate with plaintiff and appellee Beth Lavallee via email. So let me tell you, Mr. Levi, if I had gotten that email, I would have deleted it. I would have thought it was from some scam artist who was trying to sell me long-term health insurance or something. Some unknown sender in my box saying, important message for you from MedOne Solutions, which is a good example of why email isn't the same thing as regular mail. Regular mail, you really have only to open the envelope and you see what it is and you're not infecting the rest of your house by opening the envelope. But as the district court pointed out, opening some scam email can destroy your entire computer. And so people are told not to do it. Before you could delete it, you have to open it. No, no, that's not true at all. You can put a little check in your email line and get rid of the thing before you ever open it. As far as just the head note of email, not the specific link type system within that. Yours has, I'm just telling you at the very first screen, when I look at my computer and I see, oh, new emails come in. Who's it from? Well, it might be from Judge Hamilton, in which case I'll open it and see what he has to say. On the other hand, it might be from MedOne, in which case I would delete it. Who I've never heard of. I think there are two situations here that, to respond to this, is number one, that we are dealing with a case of statutory interpretation. We're dealing with a case where a statute was written in 1977 and we're applying it to modern technology. And I would direct the court to the brief that was filed by the Bureau of Consumer Financial Protection, specifically pages one and two. The Bureau notes that it's issued an advance notice of rulemaking to consider rules governing electronic delivery and validation notices. And they are aware of this, and we have a government agency, and they continue, and they say on page 25. And we have a statute that applies across the board to this kind of problem that you did not address and did not bring to the attention of the district court, which seems to me a bit of a problem here. The E-Sign Act? Yeah. Well, two things. Substantively on the E-Sign Act, MedOne, on March 20th and April 17th, 2015, when it sent its emails to Lavalle, it was not required to communicate in writing. It made a choice on March 20th and April 17th. And once it made that choice, that information had to be communicated in writing. That argument's not going anywhere, as far as I'm concerned. So let me ask you. Suppose you sent a letter, just regular mail, to the borrower and said, we've got important information for you. Come pick it up at our office. Does that comply with the statute? It would comply with the sent provision of the statute, which, again, is a very critical aspect of this case, is that the- What about the communication part? We have an important message for you. Get in your car and come to our office and pick it up. Well, certainly under the- We don't even know that you're a debt collector yet, because that opening line doesn't say so. We would direct the court to this court's decision in Horky v. JVBD Associates, which was a phone call. And in that case, it was, you have a message. It did not identify that there was a debt collector. And they said that's sufficient to establish a communication under the FDCPA. The voicemail contact- That includes the validation notice? This was not a validation notice case. I'm talking about a validation notice. Does it comply with 1692 GA to send a letter that says, we've got important information for you about this debt, come pick it up at our office? That would not comply with 1692 GA. No, nor if it said, come pick it up at our office, which is in the most dangerous neighborhood in town, which is what the email from an unknown sender with attachments looks like. It's a cyberspace equivalent. I would agree with that, but this case is not that case. This case is- Yes, it is. She doesn't know ex-ante who you are. Why should she know that some random name, it's not even like Debt Collectors, Inc. It's Med One Solutions. It makes it sound like it's medical. It makes it sound like you're selling some, as I said, some insurance product or some drug that everybody wants that'll restore your hair. It sounds like it could be anything. It's a situation where, to your question earlier, on the front line, that's true, but to the hypothetical of, go to the most dangerous part of town, that's analogous to seeing the attachment. And the record in this case establishes that she didn't see this, click on a link for attachment. Well, and I have something about that, too, because there are cases that say, once the debt collector has actual knowledge that an ordinary letter didn't reach the person, didn't reach the debtor, because it's come back from the post office marked undeliverable, not received, then you have to start all over again. Now, as it happens with email, it's actually pretty easy to have an electronic equivalent of a very secure way of knowing, and you knew that she never went all the way through all these pages to the thing that actually, finally, after about the fourth screen, would have revealed that this was actually a debt, and it was from the hospital that she'd gone to, and how much it was, and all of that. So you had actual knowledge that your effort to reach her was unsuccessful. We had actual knowledge that she didn't click through, and the analogy we would draw is that. And that means you had actual knowledge that she doesn't have any idea whether you're a hair replacement person or a debt person. The distinction that we would draw, and we noted this in our brief, is we can't control whether a consumer opens a letter. And the cases that, if you're referring to the cases that were cited by Lavallee, those cases all say you have to send them to an address where you know the consumer lives. That's fine. I was one step further down. I am completely with you. If you send a letter to an appropriate last known address, and the post office delivers it, and as far as you know, that's all that ever happened, then we assume regular delivery on the part of the postal service, and we assume that it's up to the consumer to open it up. I'm talking about the tiny subset of those letters that actually come back to you, so you know that they didn't get through. You know, the person wasn't at the address for some reason. Post office stamps undeliverable and sends it back to you. I'm not talking about the vast majority of cases where you send the letter and you are entitled to a presumption of receipt. The response to that is, the similar situation here is if we got a delivery notification that the email didn't go through. There is no indication. No, I disagree with that. The email went through, but the email, this takes us in a sense to the communication issue. Looking at that first screen, if I clicked on that email, I would learn exactly zero about what you are trying to tell me. Why do I have to keep opening box after box after box to get to the bottom of it? That's what Judge Hamilton is asking too. And I think that the response to that is twofold. One, there is the jurisdictional problem that LaValle did not testify that she went through those steps. That is not a jurisdictional problem here. Secondarily is that we really get into the- But why should she do that when consumers, I bet this is true wherever you work. It's certainly true here at the courts. We are told on practically a daily basis, don't click on links that you don't know and trust. Don't open attachments that you don't know and trust because they're very likely to be some malicious fissure. And I would submit that if that's the court's ultimate ruling, that it do it in a narrower grounds than the district court did, such that the district court said we didn't send anything. And if the court affirms that ruling, you are essentially categorically boxing email out from future communication. No, you're trying to cast this in a very broad way. And that's not necessary to decide this case. What all that's necessary to decide here, it seems to me, at least one route is just to say that you didn't comply with the E-Sign Act. You don't contend that you do, did you? We did, we said the E-Sign Act. Well, the record is inconclusive and we would certainly ask for remands. Do you contend seriously that you complied with the E-Sign Act, that you've got consent or that, yeah, that you have consent to do this from Ms. Lavallee? Based upon the record, no. But we also have a bona fide air defense that was raised. No, not to bona fide error of law, you don't. Factual, the basis of that, and I don't know because the record wasn't developed, is not a defense of law. It would be an argument that if consent was not secured by the hospital, whether we could reasonably expect that the hospital had secured necessary consent. It would be similar to a bankruptcy. But you didn't, there was no attempt to develop this. You're just making this up or what? No, there was no attempt to develop the record because it was not raised by the plaintiff alone. There would be something in the record where the hospital would say, oh, and by the way, when you give us your email, you are also consenting to be contacted electronically by our debt collectors, MedOne Solutions, and you have to log into your computer and send an electronic version of that consent back to MedOne Solutions to verify that you really have the internet access that's necessary. That's what eSign requires. I find it frivolous to think that in this record, that's what you did. I feel like you would have been talking about it if you had done it. There's absolutely no evidence in the record that we complied, and I did not mean to suggest that there was. I'm past my time, but may I reserve a minute or two? I will give you a minute afterwards, yes. Thank you. All right, we'll hear first from Mr. Duff. Yes, Your Honor, if it pleases the court. My name is Robert Duff. I represent the appellee plaintiff Beth LaValle. Based on the prior interaction with counsel, I'm going to truncate some of my argument. Clearly, the court has perceived the issues in this case. It's not about statutory interpretation. The statute, 1692 G.A., is very clear as to what it requires. So let me ask you this question. One of the more broad-ranging arguments your opponent raises is it's basically kind of a cost argument. It's very effective to try to reach people by email, and if we take a low-cost method of contacting potential debtors away from the debt collection business, we're just driving the costs up for everybody. So do you see this as a problem? Because it's pretty hard for me to see how compliance with the E-Sign Act would be particularly easy in this situation. Are we just stuck with the old snail mail? I agree. It's fraught with problems for consumers unless they are expecting, you know, this email and actually say, yes, I want to be contacted by email, and that's going to be the rare situation where you have a debt collector contacting them out of the blue. So is there any reason to think that, taking a step back, that when she gave the hospital her email address, she was consenting to being contacted by the hospital via email? To my knowledge, there's no reason to believe that in the record. Because, I mean, the next question, if you thought giving them her email address was enough, then you might say, you know, if the hospital said that us and all of our agents, would that somehow extend to a debt collector? Right. Yes, you're absolutely right. There's that issue of whether consent to the original creditor would then apply to the debt collector. And there's also the requirements of the E-Sign Act. It appears are more than just saying, yes, you can contact me by email. There's some specific requirements that, you know, for instance, just giving your email address in general would consent to those kind of communications. And so I think that would be a problem for a debt collector. What if the email had just had, in plain text, all the required information under 1692 GA? Well, it appears, certainly, there would be an issue with the E-Sign Act with regard to that. That's not something you ever raised in the district court. No, it's not. And frankly, I appreciate the Consumer Financial Protection Bureau coming in with that information. It's something, certainly, I should have raised and apologized to the court. But it's not an issue from our perspective that we ever got to because it was so obvious that this information was not sent. You know, it says, send the consumer a written notice containing. And since it was not in the email, as Your Honor proposes, and it was not, there was no attachment to this email. No, it's just a couple of links. Then you finally got to the page with the attachments. Exactly. Yes, and that's, you know, really even more, a lot of the discussion so far has been about an email, receiving an email from a strange, you know, entity that you're not expecting. And that's certainly an issue. But so is, you know, clicking on a hyperlink in an email, particularly one from an entity that's, you know, you're not, you don't have a prior relationship with, you're not expecting. As we cited in our brief, there's, you know, government entities saying, you know, do not click on a link in that situation. So do you think the big problem here, if you had to settle on a theory, is that the proper notice wasn't sent or that something was sent, but it wasn't a proper communication? Well, I don't see a reason, I guess, from separating the entire phrase, send the consumer a written notice containing the information. That was the violation that we focused on. It's partly sent, but it's the fact that, I mean, there was something sent, but it wasn't a written notice containing the information. It was an email. So our theory was that the- Certainly it could in the right situation, but you've got the problem with the E-Sign Act and then it has to contain. And since it wasn't in the text- So then they have an argument. Contain means that if you follow the breadcrumbs long enough, you'll find the debt notice. Just like, you know, my example of, maybe somebody does this at holiday times. They give you a great big giant box at the holiday and you open the box and there's another box inside and you keep opening and finally there's a little jewelry box at the end of it. So the jewelry box was contained in the giant box. It's just you had to work your way through to it. Yeah, that's just not sent though. They characterized that link, the hyperlink, several times in their briefing as a, quote, secure attachment, unquote. But there's nothing about it that's any kind of attachment. No, a link is not an attachment. An attachment goes with the e-mail and so- Takes you to different- If something had been attached, when you clicked on that link, there would be something appear. In this situation, if the computer you're looking at the e-mail on is not attached to the internet and you click on that, nothing's going to happen. There's no document that's going to pop up, no information. And so, agreed. You're reading your e-mails on an airplane. Your Honor, we would request that the court affirm the trial court in this situation to support. Thank you. All right, thank you. And Mr. DeMille Wagman. Thank you, Your Honor. The Bureau filed its brief in this case for the very limited purpose of making this court aware of the Each Sign Act, and I can tell that, at least in that, we had succeeded. You worked. Yes, you did. Judge Wood, you asked about the issue of cost with respect to e-mail, that it would be less costly for a debt collector to operate its business through e-mail. The Each Sign Act provides, and it's in Section 704 of Each Sign, that's 15 U.S.C. 7004, subsection B. It provides that the Bureau may, through rulemaking, interpret the application of e-sign to any of the statutes under the Bureau's jurisdiction. Fair Debt Collection Practices Act is one of them. And in 7004D, it specifically authorizes the Bureau to exempt a category of electronic record, such as, for example, e-mail, from e-sign's consent requirement. Now, the Bureau has issued an advance notice of proposed rulemaking regarding the Fair Debt Collection Practices Act, and among the issues, there's many, many issues that the Bureau is considering, but among them is the use of electronic communication to deliver validation notices under the Fair Debt Collection Practices Act. This notice has been percolating for quite a while, right? Is this the 2013? It's a 2013 notice. Yes, Your Honor, but it's important to understand that the Fair Debt Collection Practices Act was passed in 1977. At that point, the Federal Trade Commission had primary responsibility over the statute, and it was specifically precluded from engaging in rulemaking. Rulemaking authority came to the Bureau, and it's the first time there was authority to issue a broad rule, came to the Bureau in 2011. In 2013, the Bureau issued its advance notice of proposed rulemaking. It had 162 numbered questions in the advance notice, and there were many subparts. There were probably 500 or 600 questions. It elicited more than 40,000 comments. In 2016, the Bureau took the next step. It's the SBREFA process, which is the Small Business Review. It has to have a panel of small businesses review an outline of the rule. They did. They submitted additional comments. The Bureau's regulatory agenda has now scheduled tentatively the issuance of a notice of proposed rulemaking for next March. So there's many, many issues before the Bureau. It's the first time in 40 years that any agency has had authority to engage in rulemaking. So we just ask that if this Court finds it appropriate to address e-sign, that it take account of the fact that the Bureau does have rulemaking authority in this area. How did this case come to your attention? We monitor cases. Can I ask, Counsel, does the Bureau have a position, for example, on this problem that we've raised about whether a customer's providing email to one entity, like a hospital in this case, should suffice as consent to having as yet unnamed, unknown agents of that business contact her in the future by email? The Bureau has not taken a position on that, but that is one of the questions that was raised in the advance notice of proposed rulemaking that the Bureau issued. I confess I didn't make it all the way through the advance notice of proposed rulemaking. Yes, I can understand that, Your Honor. But if you wanted to look, it's at 7. Not yet, not yet. I know where to find it. Yes, it's just one page in the Federal Register. All right. OK, thank you. Thank you very much. Anything further, Mr. Levi? You have a minute. Two very quick points. May it please the Court, two very quick points. Number one, the question asked about whether the email was sent or whether it was a proper communication is certainly, we think, the crux of this case. And to the extent the Court is going to evaluate the manner in which the communication was made, it should be in the context of the communication, not that something wasn't sent, which we believe the record establishes it was. Second, on the substantive issue with the e-sign act, our position would be that the e-sign act would apply to a situation where there is a voicemail or an oral communication that is the initial communication, and then you are required within five days to issue something in writing. Again, on March 20th and April 17th, MedOne had a choice how to communicate. It chose to communicate in writing, but we do not believe that implicates the requirement of the e-sign act, that it would apply in situations where there is an initial communication. So your theory is that, in essence, the collector gets to decide the method of communication and, therefore, email is available just regardless of the e-sign act. In this very limited situation, with a statute that gives the choice, most of the statutes that e-sign is going to apply to will not give this choice. And the only mandatory time when a notice under 1692G must be in writing is after there is an initial communication that does not contain the disclosures, then you have to make it in writing. So because they chose to make it in writing, we do not believe that implicated e-sign. All right. Thank you very much. Thanks to all counsel. I take the case under advisement.